[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PENDENTE LITE MOTIONS
The plaintiff has filed pendente lite motions for alimony, counsel fees and expert witness fees.[1] The court heard these motions during a contested hearing held on diverse dates between February 8, 2002 and August 19, 2002.
The court has carefully considered all of the evidence introduced at hearing, the parties' financial affidavits, and the provisions of Connecticut General Statute 46b-83. The court finds that the facts set forth below were proven by a preponderance of the evidence presented.
 FACTUAL FINDINGS
The plaintiff and the defendant were married on December 18, 1976. This action was filed on August 29, 2000. The parties have continued to reside in the family home in Farmington during the pendency of this action.
The parties have three minor children, all of whom have attained the age of majority. Their oldest daughter is a student at the University of Connecticut. The two youngest children — 8-year-old twin daughters — graduated from high school last June and are about to enter their freshman year at Western New England College. (Defendant's Exhibit G).
The plaintiff, 47, is a college graduate. She has recently earned nominal income selling advertising part-time for a local newspaper. (Defendant's Exhibit A). The plaintiff previously held a real estate license, but allowed it to lapse, and has not worked in that field for a number of years. She has not had significant employment outside of the home during the marriage.
There was divergent testimony concerning the reasons for the plaintiffs lack of outside employment. The plaintiff testified that she and the defendant agreed that she would be a "stay at home" wife and mother. The CT Page 11146 defendant claimed that he repeatedly asked his wife to get a job, but the plaintiff refused to do so. There was credible evidence at trial that the parties have enjoyed a very comfortable lifestyle during the marriage. The court finds it more likely that the plaintiff's lack of employment did not become a significant issue of contention until the parties' marriage began to deteriorate.
The plaintiff has recently enrolled in an educational program for homemakers seeking to re-enter the job market. She has not actively looked for work or made other concerted efforts to secure full-time employment.
Although the plaintiff has been treated for her complaints of chronic pain, the court finds that she is physically and mentally capable of holding a full-time job. However, given her minimal work experience during the past 25 years, the court finds that the plaintiff will require some type of vocational training or assistance in order to maximize her marketability to prospective employers. At present, the plaintiff would probably be confined to entry-level positions. Accordingly, the court finds that the plaintiff has a present gross income capacity of between $15,000 and $20,000 per year.
The defendant is employed as the manager of extensive real estate holdings owned by four family trusts. The defendant's parents deeded the various properties to those trusts. The defendant also owns several income-producing properties jointly with his brother.
The defendant is paid a gross draw of $5000 per week from his employment as manager of the trusts' real property. (Plaintiff's Exhibit 27). The defendant testified that he pays both business and personal expenses from the $5000 weekly draw, and that his net weekly income is considerably less than that amount.
The defendant also receives $500 per month in income from the property which he owns jointly with his brother. (Plaintiff's Exhibit 27).
On a financial affidavit dated November 30, 2001, the defendant listed his total net weekly income as $1,735 and his total weekly expenses as $2,472. (Plaintiff's Exhibit 28). The only liability listed on that affidavit — with the exception of the home mortgage — was a $25,000 loan from the defendant's father.
The defendant's April 30, 2002 financial affidavit indicates that he receives net weekly income of $2,005 and has total weekly expenses of $3,846. (Plaintiff's Exhibit 29). The only debt listed on this CT Page 11147 affidavit, excluding the home mortgage, was the $25,000 loan from the defendant's father.
During the pendency of this action, the defendant has paid all of the household and family expenses, including most of the children's expenses. He has also paid the oldest daughter's tuition at the University of Connecticut, and the rent for her off-campus apartment.
The parties differed at hearing concerning the amount of the defendant's net annual income. The plaintiff claimed that her husband has net disposable income of $300,000 per annum. The defendant's most recent financial affidavit lists net weekly income totaling $104,260 per year ($2005 X 52). (Plaintiff's Exhibit 29).
In addition, the party's joint federal income tax returns for 1999 and 2000 indicated total annual income of $112,208 and $118,188 respectively during those years.
As noted above, the defendant's gross draw from his job as a real estate manager is $5000 per week. There was competent evidence at trial that the defendant has received gross annual amounts of $260,000 or more during each year since 1999. The parties paid total expenditures of approximately $280,000 through their joint checking account in 1999. (Plaintiff's Exhibits 23 and 24). They also made payments totaling $198,342 through their joint checking account during the first nine months of 2000. (Plaintiff's Exhibit 25).
The court is mindful of the defendant's claim that he pays his taxes and business expenses from the weekly draw money. The court notes, however, that the defendant's annual federal tax liability was approximately $20,000 in both 1999 and 2000. (Plaintiff's Exhibits 1 and 2). The court is not persuaded from the evidence presented that the defendant's annual business expenses are in excess of $130,000.
Furthermore, there was credible evidence that during 2002, the defendant received a sizeable sum of money from a source outside his weekly draw amount, and used the funds to defray personal expenses. The defendant paid a $20,000 tax obligation, and $10,500 to his attorney in this action, from an account held by 33 Sherman LLC, a real estate partnership.
The court finds that the defendant's net income is at least $200,000 per year. The court bases this finding on a preponderance of the evidence presented, and, in particular, the following:
CT Page 11148
 1. The fact that the defendant's most recent financial affidavit projects total annual expenses of $199,992;
 2. The fact that despite the extensive deficit spending claimed on his last two financial affidavits, the defendant has not incurred significant debts;
 3. The credible evidence which established that the defendant has received gross funds in excess of $260,000 during each year since 1999, and the lack of convincing evidence that he pays $150,000 annually in business expenses and taxes;
 4. The credible evidence pertaining to the parties' lifestyle and spending during the marriage, which suggests annual net income far in excess of the amount claimed by the defendant;
 5. The credible evidence pertaining to the $30,500 which the defendant received during 2002 from the 33 Sherman LLC account, and applied toward his personal expenses. That money was in addition to the defendant's gross weekly draw of $5,000, and the sum of $500 per month which he receives from his individual real estate holdings.
Unfortunately, the ongoing litigation in this matter has been both contentious and costly. The plaintiff and the defendant were recently unable to agree on a source of funding from the marital estate for their daughters' tuition bills at Western New England College. Each party has already incurred substantial attorney's fees. The plaintiff owes $30,000 to her counsel, and the defendant has paid legal fees in excess of that amount.
 ORDERS
Based on the evidence presented, the court orders that the defendant shall pay to the plaintiff; as alimony pendente lite, the sum of $600 per week. From said sum, the plaintiff shall be individually responsible for her own food, clothing, gasoline, automobile repairs, unreimbursed medical and dental expenses, cell phone, health and beauty aids, dry cleaning, health club fees, recreation and vacation costs and other incidental and discretionary expenses. The defendant shall continue to CT Page 11149 pay, on a pendente lite basis, all of the household expenses listed on his most recent financial affidavit, including the mortgage payment, real estate taxes, utilities, the plaintiffs automobile insurance premiums, and the monthly loan payment on the Lexus automobile driven by the plaintiff. The defendant shall, at his cost, also maintain the plaintiff on all existing medical and dental insurance coverage, pendente lite. All life insurance and disability insurance policies in which either party is named as an insured, or as a beneficiary, shall be maintained in full force and effect, pendente lite, by the party currently listed as paying for them. All premiums for the aforesaid insurance coverage shall be paid on a timely basis when they become due.
The forgoing orders are predicated on the court's assumption that the parties will both continue to reside in the family home in Farmington. The court finds that these pendente lite orders are necessary in order to enable the plaintiff to pay her personal expenses, to have discretionary income in keeping with the lifestyle enjoyed by the parties during the marriage, and to begin to advance toward financial independence from the defendant. In making this order, the court has considered all of the criteria delineated by Connecticut General Statute 46b-83.
The plaintiff has also moved for attorneys' fees and expert witness fees with which to prosecute this action. The court believes that it would be more appropriate for the trial court to decide the issue of counsel fees. Accordingly, the court defers action on that portion of the motion, and reserves the issue of the plaintiff's attorney's fees to the trial court.
The defendant's personal financial circumstances are complex, and are closely intertwined with his business endeavors and his family's trusts. Both the defendant, and the family trusts, own income-producing properties. Counsel for the plaintiff has requested expert witness fees in order to secure the services of a forensic accountant and a real estate appraiser. The court finds that request to be appropriate. The court orders that the plaintiff may expend up to $10,000, pendente lite, for the expert fees of an accountant and an appraiser in connection with this litigation. The plaintiff may use a marital asset under her control in order to pay for said fees. The ultimate allocation of the expert witness fees, and the asset used to pay for them, shall be reserved for determination by the trial court. The plaintiff shall promptly notify the defendant of the purpose and amounts of such expenditures, the asset utilized to pay for them, and the name and business address of the person or entity receiving said payments.
Except as specifically modified by these orders, all of the court's CT Page 11150 standing orders shall remain in full force and effect.
SO ORDERED:
BY THE COURT:
Dyer, J.